## Case No. 9,419.

### MENDELL v. The MARTIN WHITE.

[Hoff. Op. 450.]

District Court, N. D. California. Feb. 13, 1856.

ADMIRALTY—JURISDICTION—PERSONAL INJURIES.

[Admiralty has jurisdiction of a suit in rem for damages for personal injuries caused by a collision upon navigable waters, especially where a statute of the state on the navigable waters of which the injury occurred makes the vessel liable for injuries to the person as well as to property.]

Libel in rem by J. T. Mendell against the steamer Martin White to recover damages for personal injuries sustained by the libellant in a collision of the Martin White with the vessel of which libellant was master. A claim was put in on behalf of the steamer, and exceptions filed to the jurisdiction of the court. It was not denied that the suit being for a marine tort, the cause of action was within the cognizance of the admiralty; but it was insisted that, for a personal injury upon the seas, the libel could only be brought in personam (against the owner of the vessel) and that a suit in rem (against the vessel itself) could not be sustained, the latter form of action being restricted to cases of injury to property, while for injuries to the person, the libel in personam is the only remedy.

P. W. Shepheard, for libellant.
Blanding & Della Torre, for claimant.

HOFFMAN, District Judge. By the general principles of the civil as well as the common law, the principal is responsible for the wrongful acts of his agent, done in the execution of his agency (Paley, Ag. p. 3, § 1; Poth. Obl. No. 453, 456; Domat. Civ. Law, tit. 16, § 3; Story, Ag. § 452 et seq.), and the liability is familiarly imposed as well for injuries to the person as for damages to property. On this principle depends the responsibility of owners for damages by collision and for injuries to the goods of shippers. The ship owner has ever been held liable for the tortious abduction of a minor child by the master, and this too without notice of the master's acts. Sherwood v. Hall [Case No. 12,777]; Steele v. Thacher [Id. 13,348]; Plummer v. Webb [Id. 11,234]; 7 D. Rep. 132. Although at common

law the principal has been held not liable for acts of wilful and intentional wrong on the part of an agent, but only for the consequences of his negligence and unskilfullness, the maritime law carries his vicarious responsibility much further. By that law the owner is liable for all the acts of the master done in the execution of the business for which he is employed, by which third parties are injured, whether the injury was occasioned by the wilful acts, or by the negligence or want of skill of the master (Dias v. The Revenge [Case No. 3,877]); and this liability in the case of the owner of a privateer, extends not only to damages by spoliation of papers, but also for ill-treatment unnecessarily inflicted upon the persons of the captured crew (Id.; 5 C. Rob. Adm. 291; Id. 33; 1 Dod. 291). See, also, The Amiable Nancy, 3 Wheat. [16 U. S.] 456; Del Col v. Arnold, 3 Dall. [3 U. S.] 333; The Lively [Case No. 8,403]. It is therefore evident that in this case the libel, if in personam against the owners, would have been sustained, and satisfaction could have been enforced by the attachment of their property or choses in action. The Invincible [Id. 7,054]. If then the owners are personally liable as such it would seem necessarily to follow that in this as in other cases of collision, the proceedings may be directly against the ship as the offending thing.

By the civil law the owner, or exercitor, was personally responsible for the acts of the master as well ex delicto as ex contractu. If there were several, each was bound in solido for the full amount of the obligations of the master ex contractu. The maritime law introduced into this principle an important qualification. It held the owners bound in solido for the acts of the master, whether of tort or of contract, but limited the extent of their liability to the value of the ship. Such was the settled law of the Mediterranean, and such, according to Emerigon, is the established jurisprudence of the north of Europe. The Ordonnance de la Maine provides that proprietors of vessels shall be responsible for the acts of the master, but they shall be discharged by abandoning ship and freight. Whether or not this limitation applied to the obligations of the master ex contractu as well as ex delicto is disputed, but in the language of Mr. Ware it may safely be affirmed that by the general maritime law of Europe the liability of owners for the wrongful acts of the master is limited to the interest they have in the vessel, and that by abandoning the ship and freight they discharge themselves from all personal responsibility (The Rebecca [Case No. 11,619]; The Phebe [Id. 11,061]), from which the foregoing observations and citations have been taken. "If, then, this be the established principle in cases arising ex delicto, what," says Ware, J., "is the natural consequence? Is it not to render the ship herself liable to the creditor in specie? When

the law confines a creditor to a particular fund for his remuneration, it cannot be so absurd as to prohibit him from making that fund available by laying his hand on it and securing it." It was accordingly held by Judge Ware in the cases mentioned, that in a suit "founded on the wrongful acts of the master" (negligent storage of goods), the shipper may procure satisfaction for the damage by a proceeding in rem. These cases, it will be seen, nowhere recognize the distinction sought to be taken between injuries to property by the master's tort and injuries to his person; on the contrary, they seem to lay down the broad principle that in all cases of tort, where the owners are liable the ship is also liable in law, and in The Phebe [supra] it is even said that in the origin of the custom the primary liability was upon the vessel, and that of the owner was not personal but merely incidental to his ownership, from which he was discharged either by the loss of the vessel or by abandoning it to the creditor.

The personal liability of the owner in this case is not denied and the general liability of the vessel in rem, in cases of collision, is not disputed. I am unable to perceive why, on general principles of the maritime law, or in reason, the ship should not be as responsible for this kind of damage as for any other. Although I have found no direct authority on this point, yet the books contain cases closely analogous. In McGrath v. The Candalero [Case No. 8,809], the court allowed damages for the detention of the crew on board of a privateer which had made a tortious seizure of the actor's vessel, and ordered that the privateer remain under attachment until the same was paid. In the case of King v. The New World, which was an appeal from this court, the supreme court sustained a libel in rem. brought by a passenger, for personal injuries received by the explosion of a boiler, and this where the passenger was "a steamboat man," and paid no fare. 16 How. [57 U. S.] 472. I think that this case sufficiently shows the inaccuracy of the statement of Browne that for injuries to property the libel is in rem, and for those to the person in personam. 2 Bro. Eq. & Adm. 201, 202.

If this question were more doubtful, the fact that the statute of California renders boats and vessels engaged in navigating the waters of this state liable for injuries to the person as well as to property, is sufficient to justify this mode of proceeding, supported as it is by the principles and analogies of the general maritime law, and recognized in other very similar cases of maritime torts. The collision in this case occurred in the waters of this bay, and the parties are all citizens and residents of California. The case is one confessedly of admiralty jurisdiction, and I see no reason why this court should not enforce the liability created by the local law. I think. therefore, that the exceptions should be overruled.